UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                  :

48TH RESTAURANT ASSOCIATES LLC,   :
                                  :

                       Plaintiff,   :

                                  :               19-CV-7708 (VSB)

               -against-        :

                                  :        **OPINION & ORDER**

AVRA HOSPITALITY LLC et al.,       :

                                  :

                     Defendants.  :

                                  :
-------------------------------------------------------X

<u>Appearances</u>:

Joshua Avram Weigsensberg
Ryan Klarberg
William J. Thomashower
Pryor Cashman LLP
New York, New York
*Counsel for Plaintiff*

Hayden R. Pace
Stokes Wagner, ALC
Sausalito, California
*Counsel for Defendants*

<u>VERNON S. BRODERICK</u>, United States District Judge:

      Plaintiff 48th Restaurant Associates LLC ("Plaintiff") filed this action on August 16,

2019, alleging claims for trademark infringement, federal unfair competition, New York

common law unfair competition, and violation of New York's General Business Law § 360-L

against Defendants Avra Hospitality LLC ("Avra Hospitality"), Andrew Chafoulias

("Chafoulias"), and Miki Radovanovic ("Radovanovic," and together with Avra Hospitality and

Chafoulias, "Defendants").  (*See generally* Doc. 1.)  Before me is Defendants' motion to dismiss

Plaintiff's complaint for lack of personal jurisdiction and venue.  Because I agree that Plaintiff

failed to plead facts sufficient to establish either personal or venue, the motion is GRANTED.

I.      **Background**[1]

Plaintiff, a limited liability company existing under New York law, (Compl. ¶ 6),[2] operates "upscale restaurants and bars" under the "federally registered trademark, AVRA®," (Compl. ¶ 2.)  Two of Plaintiff's restaurants are in New York City, and the other is in Beverly Hills, California.  (*Id.*)  Defendant Avra Hospitality is a limited liability company organized under Minnesota law with its principal place of business in Rochester, Minnesota.  (*Id.* ¶ 7.)  Defendants Andrew Chafoulias and Miki Radovanovic are part-owners and officers of Avra Hospitality— Chafoulias is its Chief Executive Officer ("CEO"), and Radovanovic is its Chief Operating Officer ("COO").  (*Id.*)  Both Chafoulias and Radovanovic work in Rochester, Minnesota.  (*See id.* (Chafoulias and Radovanovic "have business addresses in Rochester, MN.").)

Avra Hospitality provides hotel management services to "at least three Hilton-branded hotels in Minnesota," and for the "Inn at Harbor Hill Marina . . . near New London, Connecticut" ("CT Inn").  (*Id.* ¶ 45.)  The CT Inn "is located within easy traveling distance from New York and . . . regularly attracts visitors from New York."  (*Id.* ¶ 50.)

In September 2001, Plaintiff registered the trademark AVRA (the "Avra Mark") with the United States Patent and Trademark Office ("USPTO").  (*Id.* ¶ 14 & Ex. A.)  All three of Plaintiff's restaurants use Avra[3] in their names, and, according to Plaintiff's website, all three

---

[1] This section sets forth the factual allegations contained in Plaintiff's pleadings that are relevant to the instant motion.  I construe Plaintiff's pleadings in the light most favorable to Plaintiff.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).  However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Compl." or "Complaint" refers to the complaint filed by Plaintiff in this action.  (Doc. 1.)

[3] "Avra" is a Greek name that appears to have derived from Aura, the Greek goddess of breezes.  *See* Avra or Aura,

serve "authentic Greek" food.  *See, e.g.*, Avra Beverly Hills,

https://theavragroup.com/avrabeverlyhills/ (last accessed Jan. 18, 2021).

In December 2017 and March 2018, Avra Hospitality filed with the USPTO notices of its

intent to use the trademark AVRA HOSPITLITY in connection with "[h]otel services" and

"[b]usiness [m]anagement of hotel services."  (Compl. ¶ 34.)  The appearance of the AVRA

HOSPITALITY mark, which I will call the "AH Mark," is similar to that of the Avra Mark.  (*See*

Compl. ¶¶ 36–37.)  On this basis, Plaintiff filed papers with the USPTO opposing the proposed

usage of the AH Mark.  (*Id.* ¶ 41.)  Plaintiff's opposition led to a proceeding "currently pending

before the Trademark Trial and Appeal Board of the [USPTO]."  (*Id.*)  Part of Plaintiff's

objection to the AH Mark is the "closely related and complementary" nature of Plaintiff's food

services business and Defendants' hotel business, "[b]oth" of which "are within the hospitality

industry."  (*Id.* ¶ 39.)

Around June 2019, Defendant started using the AH Mark and "the standalone term,

AVRA, in connection with Avra Hospitality's hotel management services" on the Avra

Hospitality website, www.avrahospitality.com.  (*Id.* ¶¶ 43–44.)  Of particular relevance for

present purposes, the website for the CT Inn "states[] 'Managed by Avra Hospitality' on every

page" and gives users of the website "the ability to make online reservations[] under the AVRA

HOSPITALITY mark."  (*Id.* ¶ 50.)

## II.   <u>Procedural History</u>

Plaintiff filed this action on August 16, 2019.  (Doc. 1.)  Plaintiff's Complaint alleges

claims for trademark infringement, federal unfair competition, New York common law unfair

---

https://www.greek-names.info/avra-or-aura/ (last accessed Jan. 18, 2021); Ovid, *Metamorphoses* bk. 7:812–16
(Rolfe Humphries trans., Winifred Davies ed. 1983) (c. 8 C.E.) ("I even gave the breeze a name.  'Dear Aura,' / For
that was what I called her, I remember, / 'Dear Aura, come and comfort me; receive me / In your most welcome
graces, and allay / The heat I burn with!'").

competition, and violation of New York's General Business Law § 360-L.  (Compl. ¶¶ 53–86.)

On September 12, 2019, Defendants filed a motion to dismiss and supporting papers pursuant to

Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(3) for

improper venue.  (Docs. 17–20.)  Defendants filed the opposition memorandum and an affidavit

on October 15, 2019.  (Docs. 25–26.)  Plaintiff filed its reply on October 28, 2019.  (Doc. 27.)

After Defendants filed their motion, the parties negotiated the possibility of taking early

discovery "focused solely on personal jurisdiction and venue."  (MTD Opp. 8 & Thomashower

Decl. Ex. G, at 7.)[4]  After exchanging emails, the parties' negotiations failed.  (Thomashower

Decl. Ex. G.)

## III.   Legal Standards

### A. *Rule 12(b)(2)*

"[A] federal court generally may not rule on the merits of a case without first determining

that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the

parties (personal jurisdiction)."  *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422,

430–31 (2007) (citing *Steel Co. v. Citizens For A Better Env't*, 523 U.S. 83, 93–102 (1998)).

However, a court may "turn[] directly to personal jurisdiction" to dismiss an action where it

faces "a straightforward personal jurisdiction issue presenting no complex question of state law."

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999).  Moreover, "[a]lthough [courts]

traditionally treat personal jurisdiction as a threshold question to be addressed prior to

consideration of the merits of a claim, that practice is prudential and does not reflect a restriction

on the power of the courts to address legal issues" on the merits.  *ONY, Inc. v. Cornerstone*

---

[4] "MTD Opp." refers to Plaintiff's brief filed in opposition to Defendants' motion to dismiss.  (Doc. 25.)
"Thomashower Decl." refers to the Declaration of William Thomashower and the exhibits thereto filed in opposition
to Defendants' motion to dismiss.  (Doc. 26.)

*Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) (internal citation omitted).

A plaintiff opposing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). To defeat a jurisdiction-testing motion, the plaintiff's burden of proof "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Prior to an evidentiary hearing, a plaintiff need only make a prima facie showing that jurisdiction exists. *Id.* at 84–85; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)). This showing may be made through materials outside the pleadings. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

If the court considers pleadings and affidavits submitted by the parties, the plaintiff's "prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). Plaintiff's averments "must be taken as true to the extent they are uncontroverted by the defendant's" submissions. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.,*

*Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).  If the parties present conflicting affidavits, however, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *Seetransport Wiking*, 989 F.2d at 580 (citation omitted).

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements:"  (1) "procedurally proper" "service of process;" (2) "a statutory basis for personal jurisdiction that renders such service of process effective;" and (3) "exercise of personal jurisdiction must comport with constitutional due process principles."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012).

### B. *Rule 12(b)(3)*

The legal standard for a motion to dismiss for improper venue is the same as the standard for a motion to dismiss for lack of personal jurisdiction.  *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).  That is, "[w]hen a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper."  *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968(RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Savoy Senior Hous. Corp. v. TRBC Ministries*, 401 B.R. 589, 596 (S.D.N.Y. 2009)).  "Absent an evidentiary hearing, the plaintiff need only make *a prima facie* showing that venue is proper."  *Sepanski v. Janiking, Inc.*, 822 F. Supp. 2d 309, 313 (W.D.N.Y. 2011) (citing *Gulf Ins. Co.*, 417 F.3d at 355).  "[I]n deciding a motion to dismiss for improper venue, the 'court may examine facts outside the complaint to determine whether venue is proper.  The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'"  *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (quoting *EPA ex rel. McKeown v. Port Auth.*,

162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).

## IV.   Discussion

### A.  *Personal Jurisdiction*

Here, the main dispute between the parties concerns whether New York's long-arm statute, CPLR § 302, provides for specific personal jurisdiction over Defendants.[5]  The parts of CPLR § 302 at issue are section 302(a)(1) and section 302(a)(3), which, Plaintiff argues, are satisfied due to allegations of "online uses of the [AH Mark] specifically establishing [the requisite] connection with New York and New York residents."  (MTD Opp. 11; *id.* 14 ("The same online activities, described above, are more than sufficient to establish a New York affiliation by Avra Hospitality for the purposes of C.P.L.R. § 302(a)(3)[]").)

"Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  This affiliation may be established "under the 'effects test,'" which allows for personal jurisdiction over "a defendant acting entirely outside the [forum state] . . . if the

---

[5] The parties also dispute whether exercising jurisdiction over Defendants would comport with constitutional due process requirements, but as the Second Circuit has noted, "New York decisions . . ., at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard:  whether the defendant's conduct constitutes 'purposeful availment' 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Best Van Lines*, 490 F.3d at 247 (collecting cases) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Therefore, as a matter of their statutory interpretation of CPLR § 302, it appears that New York courts have folded at least some portion of the constitutional considerations into the analysis of the elements of the various prongs of CPLR § 302.  As will be seen, I need not resolve what if any distance remains between the parts of CPLR § 302 at issue here and the limits imposed by the Due Process Clause of the Fourteenth Amendment.  For practical purposes, it would not matter if one considers purposeful availment to be part of the statutory requirement of the long-arm statute or as part of the constitutional due process analysis, since constitutional due process must be satisfied before long-arm jurisdiction can be deemed proper.  *See, e.g.*, *Waldman*, 835 F.3d at 327.

defendant expressly aimed its conduct at" the forum state.  *Id.* at 337 (internal quotation marks omitted) (quoting *Licci*, 732 F.3d at 173).

The parties devote much of their briefing to discussing the "interactive" nature of the websites displaying the allegedly infringing marks.  (*Compare, e.g.*, MTD Opp. 11 ("the CT [Inn's] highly interactive website") *with* MTD Br. 15[6] ("the 'Contact Us' portal on Avra Hospitality's website has limited interactive content.").)   In doing so, the parties are implicitly allowing the highly influential case of *Zippo Manufacturing Company v. Zippo Dot Com, Incorporated*, 952 F. Supp. 1119 (W.D. Pa. 1997), to frame their arguments.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 251 (2d Cir. 2007) ("In analyzing personal jurisdiction in the internet context, many courts have turned to the standards set out . . . in *Zippo*," which sets forth a "spectrum of internet interactivity"); 4A Charles A. Wright, Arthur R. Miller, and Adam N. Steinman, *Federal Practice and Procedure* ("Wright & Miller") § 1073 nn. 9–14 (4th ed.) (discussing the *Zippo* case).  However, as the Second Circuit has explained, "[w]hile analyzing a defendant's conduct under the *Zippo* sliding scale of interactivity may help frame the jurisdictional inquiry in some cases, . . . traditional statutory and constitutional principles remain the touchstone of the inquiry."  *Best Van Lines*, 490 F.3d at 252 (internal citations and quotation marks omitted); *see also* Wright & Miller § 1073 n.28 and accompanying text ("The exercise of specific personal jurisdiction based on the defendant's contacts with the forum through the Internet requires that the plaintiff satisfy the terms of the appropriate jurisdictional statute . . . .").  In other words, a court need not embark on a *Zippo*-like interactivity analysis if it can understand the basis for personal jurisdiction through traditional statutory and constitutional principles alone.  In this case, those "traditional statutory and constitutional principles" are more than

---

[6] "MTD Br." refers to Defendants' brief filed in support of their motion to dismiss Plaintiff's complaint.  (Doc. 18.)

enough to resolve the motion before me; I thus do not consider how interactive any websites may be.[7]

### 1.  The Statutory Bases for Personal Jurisdiction

#### a.  CPLR § 302(a)(1)

Section 302(a)(1) provides for personal jurisdiction over anyone who "transacts any business within the state [of New York] or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1) (McKinney 2021).  "New York courts define 'transact[ing] business' as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines*, 490 F.3d at 246 (alteration in original) (quotation marks omitted).  Once a defendant has engaged in even one purposeful act of "transacting business," that will satisfy CPLR § 302(a)(1) so long as "the claim arises out of the transaction." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000); *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467 (1988) ("CPLR 302(a)(1) . . . is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.").

Plaintiff's case for personal jurisdiction falls short, because they have not alleged that Defendants engaged in even one "purposeful" "transact[ion] . . . within [New York]," as the

---

[7] Many courts in this district have rejected the "notion that an interactive website, standing alone, provides sufficient grounds" for establishing specific jurisdiction over a defendant. *Mercer v. Rampart Hotel Ventures, LLC*, 19 Civ. 3551 (PAE), 2020 WL 882007, at *6 (S.D.N.Y. Feb. 24, 2020); *see also, e.g.*, *Guglielmo v. Nebraska Furniture Mart, Inc.*, 19 Civ. 11197 (KPF), 2020 WL 7480619, at *8 (S.D.N.Y. Dec. 18, 2020) ("[T]he fact that a plaintiff can access a defendant's website in New York, 'standing alone,' does not constitute transacting business in the state for the purposes of New York's long-arm statute." (citation omitted)); *Camacho v. Ne. Univ.*, 18 Civ. 10693 (ER), 2019 WL 5190688, at *5 (S.D.N.Y. Oct. 15, 2019) (rejecting argument that a court can "allow the exercise of personal jurisdiction by virtue of [a website's] interactivity alone.").

governing law requires.  Plaintiff does indeed set forth facts showing that the AH Mark is displayed on websites that New Yorkers can access (Compl. ¶ 50); that the CT Inn "regularly attracts visitors from New York," (*id.*); and that "Defendants[]" must have had "contacts and transactions with New York businesses and consumers," (MTD Opp. 12.)  However, none of these facts amount to a purposeful transaction within New York.

Plaintiff seems to acknowledge that it has failed to plead any purposeful transactions in satisfaction of CPLR § 302(a)(1), as it asks me to draw "an inference that New York residents have booked reservations through the CT [Inn]'s highly interactive website, and thus have been exposed to" the AH Mark in the course of their bookings.  (MTD Opp. 13.)  For, as Plaintiff argues, "even a single booking by a New York resident through exposure to [a mark that infringes on the Avra Mark] would be sufficient to establish jurisdiction under Section 302(a)(1)."  (*Id.*)  This argument misconstrues the governing law.  Although Plaintiff cites cases about how proof of one transaction in New York is sufficient to invoke jurisdiction under section 302(a)(1), *see, e.g.*, *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, 18-CV-2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018); *Sygall v. Pitsicalis*, 18-CV-2730 (VSB), 2018 WL 5981994, at *3 (S.D.N.Y. Nov. 14, 2018) (Broderick, J.) ("[S]hipping one infringing item into New York . . . is sufficient to establish jurisdiction."), Plaintiff fails to allege that Defendants took any sort of action aimed at New York, *cf. Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 566 (S.D.N.Y. 2000) ("[J]urisdiction under CPLR § 302(a)(1) is further bolstered by . . . direct mail solicitation of New York business."), much less that Defendants did in fact transact business in New York as section 302(a)(1) requires.  Moreover, Plaintiff neither cites law nor provides a reasoned argument as to why the "inference" it requests would be proper on the facts of this case.  Indeed, as will be seen *infra* Pt. A.2., merely transacting business with New

Yorkers cannot establish the required contacts with the State of New York.

           b.  <u>CPLR § 302(a)(3)</u>

Section 302(a)(3) allows for personal jurisdiction in a situation where a person "commits a tortious act [outside] the state" that "cause[s] injury to person or property within the state, except as to a cause of action for defamation . . . if" the person either "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or "(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. § 302(a)(3) (McKinney 2021).  Plaintiff concedes, implicitly, that only the latter of these prongs of section 302(a)(3) could suffice on the facts of this case.  (*See* MTD Opp. 14 ("[T]he only issues that remain under Section 302(a)(3) are whether Defendants expected or should reasonably have expected their tortious acts to have consequences in [New York] and whether Avra Hospitality derives substantial revenue from interstate or international commerce.").

"Section 302(a)(3)(ii) requires that the plaintiff demonstrate '(1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.'"  *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 106 (S.D.N.Y. 2015) (quoting *Penguin Group (USA) Inc. v. American Buddha,* 609 F.3d 30, 36 (2d Cir. 2010)).

In *Chatwal Hotels*, a website displayed an allegedly infringing trademark, and that same "website . . . allow[ed] customers to sign up" to receive "news and information" by email.  *See*

*id.* at 101.  "More than 30,000 people signed up" to receive these emails, "and approximately 1% of these individuals were New York residents."  *Id.* at 101–02.  From this, the *Chatwal Hotels* court found that "plaintiff ha[d] alleged sufficient facts to show that the defendants expected their actions to have consequences in New York," since "defendants . . . used [their] allegedly infringing website and emails to attract customers across the nation, including New York" through actions aimed at New Yorkers.  *Id.* at 107.

With regard to the facts presented here, although section 302(a)(3)(ii) creates a somewhat closer call than does section 302(a)(1), Plaintiff still fails to meet the requirements of this part of New York's long-arm statute, because Plaintiff fails to plead facts showing why Defendants should have had any expectations of consequences in the State of New York.  Unlike in *Chatwal Hotels*, Plaintiff does not plead that Defendants have ever marketed to New Yorkers concerning any of their properties.  Although I credit the pleading that the CT Inn "regularly attracts visitors from New York," (Compl. ¶ 50), this alone does not show that Defendants made "a discernible effort to directly or indirectly serve the New York market."  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (quoting *Schaadt v. T.W. Kutter, Inc.,* 169 A.D.2d 969, 970 (3d Dep't 1991) ("It is not enough that a defendant foresaw the possibility that its product would find its way here; foreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market.").

### 2.  Constitutional Due Process for Personal Jurisdiction

Even if I were to find that Defendants had engaged in conduct to place them within the reach of CPLR § 302, I would still have to find that the constitutional principles governing specific jurisdiction do not allow for personal jurisdiction over Defendants in this case.  A brief review of certain Supreme Court precedents is instructive to demonstrate how Plaintiff's

allegations fall short.

In *Walden v. Fiore*, the Supreme Court held that the "minimum contacts" portion of the constitutional due process analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 571 U.S. 277, 285 (2014). *See also Waldman*, 835 F.3d at 338 ("[T]he facts of *Walden* also suggest that a defendant's mere knowledge that a plaintiff resides in a specific jurisdiction would be insufficient to subject a defendant to specific jurisdiction in that jurisdiction if the defendant does nothing in connection with the tort in that jurisdiction.").

In *J. McIntyre Machinery, Limited. v. Nicastro*, a plurality of four justices agreed that the "Respondent ha[d] not established that J. McIntyre," a foreign company defendant, "engaged in conduct purposefully directed at New Jersey," 564 U.S. 873, 886 (2011), and two more justices agreed that "the relevant facts" did not show that the foreign company defendant had "purposefully availed itself the privilege of conducting activities within New Jersey," *id.* at 889 (Breyer, J., concurring) (internal quotation marks omitted). The Court reached its conclusion of no personal jurisdiction over the vigorous dissent of three justices, led by Justice Ginsburg, who noted that the foreign company defendant sold machinery "for metal recycling;" "exhibited its products at . . . trade shows" in the United States; and that New Jersey processed more scrap-metal "than any other State." *Id.* at 894–96 (Ginsburg, J., dissenting). From this, the dissent concluded that the foreign company defendant must "have intended" to avail itself of New Jersey, the State with "the largest scrap metal market." *Id.* at 905. But the Court on balance rejected the dissenters' argument, finding that there was "no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else" to suggest that the foreign company defendant had taken actions aimed at New Jersey. *See id.* at 889 (Breyer, J.,

concurring).[8]

In contrast with *Nicastro*, just last year, in *Ford Motor Company v. Montana Eighth Judicial District Court*, the Court held that Ford was subject to personal jurisdiction in States where it had purposefully availed itself of those States' markets through "billboards, TV and radio spots, print ads, and direct mail" meant to advertise its cars to residents of those States. 141 S.Ct. 1017, 1028 (2021).  Because of this, when Ford's cars wound up in accidents allegedly arising from tortious product defects in those States, the "claims in the[] cases" "relate[d] to" Ford's intentionally-created contacts with those States.  *Id.*

Taken together, these precedents show the insufficiency of Plaintiff's pleadings.  The CT Inn may "regularly attract[] visitors from New York," (Compl. ¶ 50), but merely doing business with New Yorkers cannot lead to personal jurisdiction under *Walden*.  In addition, Plaintiff never pleads that Defendants acted to purposefully avail themselves of the State of New York as a market within the bounds set forth by *Nicastro* or *Ford*—there are no allegations of "advertising, advice, marketing, or anything else" aimed at New York as a market.  *See Nicastro*, 564 U.S. at 889 (Breyer, J., concurring).

Moreover, in this case, there is no question that Minnesota is a proper State forum for this suit.  Defendants concede that they are all subject to personal jurisdiction in Minnesota, and they even add that "[t]he substantial part of Defendants' alleged acts of infringement occurred in

---

[8] *See also* Wright & Miller § 1067.4 n.55 and accompanying text ("Given the lack of a majority opinion, many lower courts have indicated that Justice Breyer's concurring opinion constitutes the Court's holding [in *Nicastro*], although many lower courts have relied on Justice Kennedy's plurality opinion" in *Nicastro*); *Marks v. United States,* 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal citation and quotation marks omitted)); *see, e.g., Knox v. MetalForming, Inc.*, 914 F.3d 685, 691 (1st Cir. 2019) ("Like other circuits, we have held that the narrowest, and thus binding, opinion from the fragmented Court in [*Nicastro*] was Justice Breyer's." (quotation marks and citations omitted)).

Minnesota." (MTD Br. 5.) Plaintiff does not contest that this suit could properly be brought in

Minnesota.[9]

### B. *Venue*

Furthermore, even if exercising personal jurisdiction were appropriate here, I have an

alternative ground for dismissal, which is that Plaintiff did not plead facts sufficient to establish

venue in this district.

Plaintiff argues that venue is proper here because Defendants "operate[] an interactive

website that is available to New York users . . . that infringes [Plaintiff's] trademark," and that

this satisfies the provisions of 28 U.S.C. § 1391(b)(2). (MTD Opp. 26.) Section 1391(b)(2)

provides for venue in "a judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In cases involving "trademark

infringement claims, venue may be proper in each jurisdiction where infringement is properly

alleged to have occurred." *Detroit Coffee Co., LLC v. Soup for You, LLC*, 16-CV-9875 (JPO),

2018 WL 941747, at *2 (S.D.N.Y. Feb. 16, 2018) (quoting *Pilates, Inc. v. Pilates Inst., Inc.*, 891

F. Supp. 175, 182 (S.D.N.Y. 1995)).

Plaintiff's argument falls short because the "[t]he mere existence of" a trademark-

infringing website that New Yorkers can access "does not indicate that a 'substantial part' of the

infringing events occurred in this district" within the meaning of section 1391(b)(2). *Id.* at *4.

Indeed, the cases Plaintiff cites in its brief show that venue would require Defendants to have

taken some sort of action in or towards this district. *See Alpha Int'l, Inc. v. T-Reproductions,*

*Inc.*, No. 02 Civ.9586 SAS, 2003 WL 21511957, at *5 (S.D.N.Y. July 1, 2003) ("[A]

---

[9] The closest Plaintiff comes to engaging with Defendant's concession is to argue that, even if "venue might also be proper in . . . Minnesota, . . . venue can be . . . proper in more than one judicial district." (MTD Opp. 22 n.16.)

'substantial' part of the events related to the claim occurred in New York" by virtue of "an effort to market infringing products in New York."  (citing *D'Anton Jos, S.L. v. Doll Factory, Inc.,* 937 F. Supp. 320, 321 (S.D.N.Y. 1996)); *Hsin Ten Enter. USA, Inc. v. Clark Enterprises*, 138 F. Supp. 2d 449, 460 (S.D.N.Y. 2000) ("[A] substantial part of events occurs in New York if the defendant targets New York by advertising and actively pursues efforts to market the infringing product here or if the defendant sells a substantial amount of the allegedly infringing goods to customers here."  (quoting *D'Anton Jos*, 937 F. Supp. at 321)).  Plaintiff nowhere alleges that Defendants ever did anything with the AH Mark in or aimed at New York.  As such, I cannot find that a "substantial part" of any conduct at issue took place within this district.

### C.  *Plaintiff's Request for Jurisdictional Discovery*

Because venue is lacking in this case, Plaintiff's request for jurisdictional discovery is denied.  Plaintiff neither requested venue-related discovery nor offered "fact-specific allegations or evidence that could support a finding that venue is proper over [Defendants]."  *See NetSoc, LLC v. Chegg Inc.*, Nos. 18-CV-10262 et al., (RA), 2019 WL 4857340, at *4 (S.D.N.Y. Oct. 2, 2019) (applying Second Circuit law concerning jurisdictional discovery in denying a request "to conduct venue discovery" where plaintiff "failed to allege fact-specific allegations or evidence that could support a finding that venue is proper").

V.      <u>**Conclusion**</u>

For the reason stated above, Defendants' motion to dismiss for lack of personal

jurisdiction and venue is GRANTED.


SO ORDERED.

Dated: January 24, 2022
        New York, New York

Vernon S. Broderick
United States District Judge